WOODS *v.* STATE OF INDIANA.

[No. 29,092. Filed May 20, 1954.]

*Wilbur F. Dassel,* of Evansville, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling* and *Richard M. Givan,* Deputy Attorneys General, for appellee.

EMMERT, J.—This is an appeal from a judgment sentencing appellant to the Indiana State Prison for life, after a jury had found him guilty of rape of a female child under the age of twelve years. The error assigned is the overruling of his motion for a new trial.

The court in its preliminary instructions to the jury under Rule 1-7A read the affidavit. Preliminary Instruction No. 1 in part stated:

"To this affidavit, the defendant has been arraigned in open court, and has entered his plea of not guilty, and has filed his notice of alibi.
"Upon the issues thus joined, the burden is upon the State of Indiana to establish the material averments of the affidavit by the evidence to the exclusion of every reasonable doubt."

By preliminary Instruction No. 3, the court told the jury that the burden of proving every material allegation beyond all reasonable doubt was upon the State and the burden never shifted to the defendant.[1] Appellant insists that he was prejudiced because the court did not read in full his notice of alibi filed pur-

---

1. "The Court instructs the jury that the law presumes that the defendant is innocent and that the burden of proving, beyond all reasonable doubt, every material allegation necessary to estabish the defendant's guilt rests upon the State throughout the trial, and that the burden of proof never shifts to the defendant, that the law does not require the defendant to prove by evidence his innocence, or excuses, or justifications, but if from all the evidence in the case, the jury entertains a reasonable doubt as to whether the defendant is guilty, then he must be acquitted." Court's preliminary Instruction No. 3.

suant to Ch. 228 of the 1935 Acts, §§9-1631 to 9-1633, Burns' 1942 Replacement. Rule 1-7A requires the court to instruct the jury in writing "as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received." Admittedly the instruction as to alibi was not as full and complete as it might have been, but in our opinion Ch. 228 of the 1935 Acts does not make the notice of alibi a pleading in the cause. Under §9-1132, Burns' 1942 Replacement, appellant could have specially pleaded the defense of alibi, but when he did not, as was the case here, the defense was, as a matter of law, in issue under a plea of not guilty.[2] Chapter 228 of the 1935 Acts does not provide as to the manner of making of issues, but it does establish rules for both the accused and the State as to the introduction of evidence concerning an alibi. See *Pearman* v. *State* (1954), 233 Ind. 111, 117 N. E. 2d 362. We find no error in the court's preliminary instructions under Rule 1-7A.

There was no motion for a separation of the jury, and the jury did separate at the noon intermission and at the conclusion of each day of the trial. However, when they returned to the court house they were in a room behind the court room. Appellant's special bill of exceptions No. 1 fails to contain any diagram of the court room and the rooms connected with and under the jurisdiction of the court, and we are not able to determine whether the alleged miscon-

2. "In all criminal prosecutions, except as in the next section provided, the defendant may plead the general issue orally, which shall be entered on the minutes of the court, and under it, the defendant may show and prove on the trial that he has before had judgment of acquittal, or been convicted or pardoned for the same offense, or any matter of defense except insanity. But the defendant may plead specially any matter of defense." [Acts 1905, ch. 169, §198, p. 584.] Section 9-1132, Burns' 1942 Replacement.

duct of the jury occurred in the regular jury room or in another room which was used as a waiting room by the jury after it had been duly sworn and impaneled to try the cause. In this special bill of exceptions we find the testimony of the two court bailiffs who had charge of the jury and the testimony of counsel for appellant. None of this testimony was contradicted, nor did the State introduce any evidence in rebuttal. From this testimony it is made to appear that police officers who were witnesses for the State, and the sheriff, who had been active in attempting to solve the crime, were visiting with members of the jury in the room where the jury gathered during intermissions and recesses. When the trial judge was on the bench, counsel for appellant in open court requested one bailiff to stop the witnesses from visiting with the jury. The next day the visiting continued, and counsel for appellant duly moved for a mistrial, which, after a hearing, was overruled by the court. It was not made to appear that any of the conversations had anything to do with the evidence in the cause, yet such conduct cannot escape our condemnation even though the witnesses may have made no attempt to discuss the cause. If the appellant during intermissions had been permitted to go in the jury room and visit and fraternize with members of the jury, the State could properly have moved to declare a mistrial. The jury should determine the credibility of witnesses and the weight to be given their testimony from the evidence given upon the trial, and it would be all too easy for the jury unconsciously to be influenced as to these matters by a friendly association with the witnesses for the State.

Canon 23 of the Canons of Professional Ethics adopted by the American Bar Association states the correct rule for the attorney's conduct toward a jury as follows:

"All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing. A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause."

We feel the witnesses for both sides should be required to govern their conduct with equal propriety. The conduct of witnesses in visiting with the jury was prima facie prejudicial to the appellant, and for this cause the judgment must be reversed. 1 Hyatt on Trials, §§933, 934, pp. 949, 950.[3]

---

3. We take this occasion to remind the trial courts and the profession that such courts have ample jurisdiction and authority to arrange the quarters for the jury so that there would be no opportunity for improper influences to be exerted upon the jury. The Constitution does not require that an appropriation be made before a constitutional court such as a circuit court, or a statutory court of superior jurisdiction, be authorized or empowered to provide for the reasonable and necessary operating expenses of such court. Chapter 154 of the 1899 Acts (The County Reform Act, §26-501 *et seq.*, Burns' 1948 Replacement), and Acts amendatory thereto, cannot constitutionally prevent or limit the courts from administering justice and doing that which is necessary to operate as a court. "The Constitution of this state vests the judicial power in the courts. The judiciary is an independent and equal coordinate branch of the government. Courts were established for the purpose of administering justice judicially, and it has been said that their powers are coequal with their duties." *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 498, 29 N. E. 2d 405, 130 A. L. R. 1427. The efficient administration of justice, which is the duty of the courts, cannot be made to depend upon the discretion or whim of the county council or any other administrative or executive officer of county government. If the jury quarters of the Vanderburgh Circuit Court need remodeling to protect the integrity of its juries, it is the court's right as well as its duty to see that this is done, and the court has ample power and authority to enforce the payment of any costs reasonably and necessarily incurred in accomplishing this purpose. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427, *supra.* As was said in *Board of Commissioners of Vigo County* v. *Stout* (1893), 136 Ind. 53, 35 N. E. 683, 22 L. R. A. 398:

"Courts are an integral part of the government, and entirely independent; deriving their powers directly from the constitu-

Appellant was a witness in his own behalf, and he also introduced testimony by a number of witnesses that his general reputation for morality was good in the community in which he resided.

After appellant had rested, over appellant's objection, the State was permitted to introduce testimony by another witness which tended to show appellant had sought to induce the witness, a female juvenile under the age of consent, into his car along the curb of a street in Evansville. This was not an attempt by the State to prove other specific acts to show scheme, plan, intention or design which were held admissible in *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769, and if it had been offered for such purpose it should have been introduced by the State in its evidence in chief. The Prosecuting Attorney stated that such testimony was "a matter of rebuttal, purely and simply rebutting the testimony of this defendant's various character witnesses, to show what the moral character of this man is." "Evidence of specific acts is not competent to prove general reputation. *Griffith* v. *State* (1895), 140 Ind. 163, 39 N. E. 440; *Dunn* v. *State* (1904), 162 Ind. 174, 182, 70 N. E. 521." *Davis* v.

---

tion, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the constitution or established in pursuance of the provisions of the constitution, can not be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of actions of courts. *Little* v. *State*, 90 Ind. 338; *Smythe* v. *Boswell*, 117 Ind. 365, [20 N. E. 263]; *Ex parte Griffiths*, 118 Ind. 83, [20 N. E. 513]; *State ex rel.* v. *Noble*, 118 Ind. 350; *State ex rel.* v. *Hyde*, 121 Ind. 20; *Langenberg* v. *Decker*, 131 Ind. 471, [31 N. E. 190]. [Pages 58, 59.]

". . . It was the inherent right of the court, and it had the power, to provide a suitable court room; and if that were already provided, to secure also fit and convenient means of using such court room, including facilities for access thereto, suitable and necessary for the court itself, and in keeping with the character and plan of the building." [Page 62.]

See also *Board of Commrs. of White County* v. *Gwin, Sheriff* (1894), 136 Ind. 562, 36 N. E. 237, 22 L. R. A. 402.

*State* (1926), 197 Ind. 448, 453, 151 N. E. 329. As was stated by Dean Wigmore in his treatise on evidence, "It is forbidden, in showing that the defendant has not the good character which he affirms, to resort to *particular acts of misconduct* by him." 1 Wigmore, Evidence (3rd Ed.), §193, p. 643.[4]

Over the objection of the appellant the State was permitted to prove what the prosecuting witness said to other persons shortly after the commission of the offense. In *Thompson* v. *State* (1871), 38 Ind. 39, 40, this court stated the rules for the admission of evidence that the prosecuting witness made complaint of the outrage as follows:

"1. That the prosecutor may show by the testimony of the prosecuting witness, or that of other witnesses, that she made complaint of the outrage recently after its commission, and when, where, and to whom it was made.

"2. That he cannot be allowed to prove the name of the person charged with the crime, or the particulars as narrated by her.

"3. On the direct examination the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive in answer only a simple yes or no.

"4. That such statement is only corroborative of her testimony, and is not evidence of the fact upon which the jury can find the defendant guilty; and when she is not a witness in the case, it is wholly inadmissible."

---

4. Such evidence is to be distinguished from the cross-examination of a witness as to the good reputation of an accused by questions as to rumors of misconduct by the accused which would weaken the force of the witness's testimony. "The questions were relevant, not to prove that the appellant had been guilty of the offenses referred to in the questions, but to elicit testimony which might affect the credibility of the witness's evidence in chief as to the appellant's reputation for humanity and honesty." *McDonel* v. *State* (1883), 90 Ind. 320, 325. See also *Shears* v. *State* (1897), 147 Ind. 51, 46 N. E. 331.

The rules announced in this case have been followed in *Cross* v. *State* (1892), 132 Ind. 65, 31 N. E. 473; *Polson* v. *State* (1893), 137 Ind. 519, 35 N. E. 907; *Kelley* v. *State* (1948), 226 Ind. 148, 78 N. E. 2d 547.[5]

Other asserted errors are not likely to recur in a new trial, and it is not necessary to discuss them.

Judgment reversed with instructions to the trial court to sustain appellant's motion for a new trial.

Draper, C. J., Gilkison, Flanagan and Bobbitt, J. J., concur.

NOTE.—Reported in 119 N. E. 2d 558.

5. "The purpose is to negative the supposed inconsistency of silence by showing that there was not silence. Thus the gist of the evidential circumstances is merely not-silence, *i.e.* the *fact* of a complaint, but the fact only. That she complained of a rape, or an attempt at rape, is all the principle permits; the further terms of her utterance (except so far as to identify the time and place with that of the one charged) are not only immaterial for the purpose, but practically turn the statement into a hearsay assertion, and as such it is inadmissible (except on the third theory)." 4 Wigmore, Evidence (3rd Ed.) §1136, p. 224.