Jerome R. **MACLIN**, Appellant,

v.

**STATE of Indiana,** Appellee.

No. 1078S242.

Supreme Court of Indiana.

Sept. 25, 1979.

John H. McKenna, Gary, for appellant.

Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, James R. Maclin, was convicted in a jury trial of rape, Ind.Code § 35–13–4–3 (Burns Code Edition) since repealed effective October 1, 1977, and kidnapping, Ind.Code § 35–1–55–1 (Burns Code Edition) since repealed effective October 1, 1977. He was sentenced to twenty-one years and life imprisonment. Two issues are raised on appeal: (1) whether the verdicts were supported by sufficient evidence; and (2) whether the trial court erred in overruling appellant's motion to suppress the in-court identification of appellant by the alleged victim.

The gravamen of the charged offenses is that appellant abducted a woman from the public street at gunpoint and transported her in a car to a building which he forced her to enter and while therein he sexually assaulted her. He contends in this appeal that the evidence serving to identify him as the perpetrator of these offenses was wholly insufficient to support the jury verdicts. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657.

The evidence which the jury could have based its verdict on is as follows. The victim, a twenty-six year old woman, an employee of the City of Gary, was walking to work at 8:30 a. m. on August 17, 1977. A lone man driving a gold Cadillac asked her if she wanted a ride and she responded that she did not. He then proceeded to park the car ahead of her on the street and as she passed he exited the car with a gun in his hand and ordered her inside. She did so and as they drove off he told her to pull a hat down over her eyes which she did. The car proceeded for about five minutes and pulled into a garage at the rear of a building. She removed the hat as they emerged and walked into the basement of the building. She then noticed that her assailant dragged one leg as he walked. While there, under the continuing threat of the gun which he held in his hand, she disrobed. She submitted to repeated sexual intercourse for one and one-half hours, during which time he kept the gun on a table next to the bed. The victim noticed a scar on the man's chest. After this episode he took the gun again in hand and they left the building returning to the car. The man then drove the car to a filling station where

he bought gas and delivered her to her place of employment. The entire abduction had lasted about two hours. The victim within an hour reported the attack and on the same day went to the Gary Police Department and viewed many photographs there in an unsuccessful attempt to identify her assailant.

From the victim's description of the car including a distinctive windshield sticker and the building the investigators had located both the car and building within a week. Upon searching the basement they located the bed and area described by the victim. The building was occupied by appellant's mother.

At trial the victim pointed out appellant from the witness stand as the man who had abducted and assaulted her. Appellant's grandmother provided alibi evidence that appellant was living with her in Tennessee during the entire month of August. During the grandmother's testimony she described appellant as being crippled and as having a scar on his chest. Appellant was required on motion of the prosecutor to walk about in front of the jury.

■ Appellant concedes that a conviction may properly be sustained upon the uncorroborated testimony of a single witness. *Wims v. State*, (1977) Ind., 370 N.E.2d 358. Appellant argues that the testimony of the victim fails to adequately support the identification of appellant as the perpetrator of the crimes as it was not precise and certain and because the witness had only a limited opportunity to observe her assailant while in an intense emotional state. He likewise points out that the victim testified that appellant had longer hair and a beard which beard was not present on August 17, 1977, and that no weapon was found at the residence or in the car. The victim did have her view of her abductor obstructed by the hat while in the car. Her opportunity to observe him was not, however, impeded at all for a period of one and a half hours while she was being held and mistreated in the basement of the building. She also got a good look at him before she was seized while on the street and again following

their departure from the building while at the filling station. Her testimony at trial was direct, unexaggerated and unequivocal. It was unshaken. We find that her testimony identifying appellant as her assailant did not lack the requisite evidentiary quality to support the jury's conclusion beyond a reasonable doubt that appellant was the perpetrator of these offenses.

■ Appellant moved orally at trial to suppress the victim's in-court identification of him because of a suggestive photographic identification procedure employed by the investigating officers. Due process requires suppression of out-of-court identifications conducted in an unnecessarily suggestive manner. *Stovall v. Denno*, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Subsequent in-court identification by the same witness is subject to suppression as well. *Neil v. Biggers*, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193. Where the extrajudicial identification procedure was not unnecessarily suggestive, the out-of-court and the in-court identifications by a witness may be admitted. *Norris v. State*, (1976) 265 Ind. 508, 356 N.E.2d 204; *Zion v. State*, (1977) 266 Ind. 563, 365 N.E.2d 766. The photograph as well as the live lineup can be impermissibly suggestive so as to violate the right to due process and require suppression. *Simmons v. United States*, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Sawyer v. State*, (1973) 260 Ind. 597, 298 N.E.2d 440. In *Parker v. State*, (1976) 265 Ind. 595, 358 N.E.2d 110, this Court held that the exhibition of a single photograph of a suspect is unduly suggestive. The practice of informing the witness that the suspected person is among those exhibited has likewise been condemned as inappropriately suggestive. *Whitt v. State*, (1977) 266 Ind. 211, 361 N.E.2d 913.

■ The merits of this issue were litigated below at a hearing outside the presence of the jury. It showed that a week after the alleged offense, and after attempts by the victim to identify her assailant from photographs at the stationhouse had proved

unsuccessful, two officers appeared at the victim's residence and produced ten to twelve photographs of different men for her examination. She readily picked appellant's photo from among them as her attacker. At the hearing she described that occasion as follows:

"Q. Now, thedonia, you were shown eight to ten pictures, correct?

A. Yes.

\* \* \* \* \* \*

Q. Did Officer Petrol or Officer Finnerty indicate to you at any time that the picture of the one who assaulted you was included among those photographs?

A. No.

Q. Where was Mr. Maclin's photograph in the stack, do you recall?

A. No.

Q. Was Mr. Maclin's photograph on top?

A. No.

Q. Was it on the bottom?

A. No.

Q. Were you handed a picture in a stack, or were they spread on a table?

A. In a stack.

Q. Did the police officers in any way suggest that Mr. Maclin was the assailant, prior to your picking the picture out?

A. No.

Q. What did the officers say to you as they handed you the stack?

A. They asked me to look through the pictures, and if I would, identify the person then. Just to pick the person out.

Q. Did they say anything else to you?

A. No.

Q. How long did it take? For you to pick the picture of Mr. Maclin out?

A. I identified the picture right away.

\* \* \* \* \* \*

Q. What did you say?

A. This is the person."

Appellant argues that the police officers' statement to the victim at the time they handed her the stack was in the nature of a command or order to pick one as her assailant, or to pick the one most closely depicting her assailant. The attribution is not accurate. The instruction given her by the officers was not more than an invitation to pick out her assailant's photograph if she could. There was little coercive quality to the statement made. To the degree that the statement was suggestive of the fact that a photograph of a strong suspect was among those tendered, it was permissibly so. Any proffer of a photographic display to a victim for identification purposes carries with it the implication that a photograph of the perpetrator sought may be among those tendered. That degree of suggestivity is necessary if the photographic display is to serve its purpose. Inasmuch as the process adopted by the investigating officers was not impermissibly and unnecessarily suggestive, the in-court identification was admissible at trial.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.