**Danny FISHER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 382S121.**

Supreme Court of Indiana.

Sept. 27, 1983.

Susan K. Carpenter, Public Defender of Indiana, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Danny Fisher was found guilty by a jury in the Monroe Superior Court of class B felony burglary and class C felony receiving stolen property. The trial court subsequently sentenced him to concurrent terms of fifteen years and three years, respectively. The only issue presented for our review in this direct appeal is whether the evidence was sufficient to support Appellant's burglary conviction. Appellant raises no question concerning his conviction and sentence for receiving stolen property.

The evidence adduced at trial tended to show that the home of Lowell Dean Williams, a Bloomington police officer, was burglarized while Williams and his wife were away sometime between 1:30 p.m. and 9:00 p.m. on May 31, 1981. When Mr. and Mrs. Williams returned home, they found their possessions strewn about the house and many items missing. Specifically missing were a large number of guns, a gun belt, handcuffs, a cartridge holder, two po-

lice scanners, some ammunition, silverware and other small items including three watches. Raymond Martin lived approximately two hundred yards down the street from Mr. and Mrs. Williams. Martin testified that he and his wife drove past the Williams' house at approximately 4:40 p.m. on May 31 and saw someone leaving the property. The person they saw was about twenty years of age, 5'9", 159 pounds, had blonde hair and was wearing military type clothing; Martin picked Appellant from a photographic lineup as that person. Martin also identified Appellant in court and affirmed that he had seen Appellant and not Appellant's fifteen-year-old brother, Dennis Fisher. Appellant's testimony was that he was en route to his girlfriend's house located in the neighborhood of Mr. and Mrs. Williams.

Officer Don Renfro of the Bloomington Police Department testified that he met with Malcolm Wade on June 1, 1981, to discuss the instant burglary. Wade showed Renfro several rifles and shotguns which Renfro determined to be among those weapons stolen from the Williams' house. Wade told Renfro that he had received the guns from Appellant and was to sell them in St. Louis for $100.00. Officer Richard McMurry testified that he previously had worked with Wade and had always found him reliable. After obtaining a warrant to search Appellant's residence, Officer Renfro, Malcolm Wade and several other Officers went to Appellant's trailer to execute the search warrant. When Renfro knocked on the door, Dennis Fisher opened it and immediately was restrained by the officers. The officers asked where Appellant was and Dennis stated that Appellant was in "his" room. Renfro found Appellant hiding in the room indicated. When Renfro asked Appellant where the stolen items were, Appellant replied that Renfro should find them if he could. Officers Dierckman and McGlothin searched in the bedroom where Appellant had been hiding and found a large number of the items stolen from the Williams' home. Renfro testified that there was an old shed type garage on the west side of the trailer where the officers found

shotguns and rifles as well as a box of silverware and a holster and handcuff case. Officer McGlothin testified that when he was transporting Danny and Dennis Fisher to the police station, he overheard the two brothers talking and interpreted the conversation as being one in which Appellant suggestively reminded Dennis that they had an alibi.

Malcolm Wade was granted use immunity and testified at Appellant's trial. He stated that he met Appellant while they were incarcerated together at the Monroe County Jail during April, 1981. Appellant telephoned Wade's sister on June 1 and left his telephone number with a message for Wade to call him. Wade returned Appellant's call but spoke to Dennis Fisher leaving a message for Appellant to call Wade at his sister's house. Appellant drove to the house of Wade's sister at approximately 1:30 p.m. on June 1 and picked up Wade. While returning to Appellant's trailer, Appellant told Wade that he had some guns to sell which he had gotten from a policeman. Appellant also opened his wallet and showed Wade a policeman's badge. Wade testified that after reaching Appellant's trailer, Appellant got out the guns and they fired each one to be certain they were in working order. Appellant also showed Wade a .357 Magnum which he said he intended to keep for himself. The long guns were loaded into the trunk of Appellant's car and transported to Wade's apartment. Appellant thereupon stated to Wade that he wanted $100 and a nickel bag of marijuana in exchange for the weapons. Wade told Appellant that he would have Appellant's money on June 3 and Appellant replied that he would be back on June 3 with more guns. Wade testified that when he subsequently thought over the situation, he decided that he did not want to be involved with selling stolen guns so he contacted the Bloomington Police Department.

State Police Officer Maurice Allcron testified that he found the circumstances of the instant burglary similar to those of several other burglaries he also was investigating. Allcron discovered that Dennis

Fisher's boot had the same sole design as that of a footprint found in the Williams' home and found at one of the earlier burglaries investigated by Allcron. Dennis Fisher testified that he was the person who committed the instant burglary and who stole all of the weapons and other items from the Williams. Dennis Fisher testified that Appellant did not take part in the burglary.

In raising his sufficiency of the evidence question, Appellant asks us to weigh the evidence and determine the credibility of the witnesses. He specifically claims that the testimonies of Raymond Martin and Malcolm Wade are so unreliable and inconsistent that they cannot reasonably be believed and that the confession of Appellant's younger brother that he, not Appellant, committed the crime indicates a total insufficiency of the evidence. We again must state that this Court will neither weigh the evidence nor judge the credibility of witnesses but will look only to the evidence most favorable to the State with all reasonable inferences that may be drawn therefrom. *Lewis v. State,* (1982) Ind., 438 N.E.2d 289; *Borden v. State,* (1980) Ind., 400 N.E.2d 1368; *Morris v. State,* (1980) Ind., 398 N.E.2d 1284. If probative evidence can be found to prove each element of an offense beyond a reasonable doubt, a conviction will be affirmed. *Lewis, supra; White v. State,* (1979) Ind., 397 N.E.2d 949; *Marsh v. State,* (1979) Ind., 396 N.E.2d 883. It is for the trier of fact to reject a defendant's version of what happened, to determine all inferences arising from the evidence and to decide what witnesses to believe. *Menefee v. State,* (1981) Ind., 417 N.E.2d 302; *Bentley v. State,* (1981) Ind., 414 N.E.2d 573; *Hill v. State,* (1979) 271 Ind. 549, 394 N.E.2d 132.

■ Appellant contends that Dennis Fisher's confession absolving Appellant of the instant crime together with the evidence that a footprint matching Dennis Fisher's boot was found at the crime scene while Appellant's footprint was not found tends to prove that Appellant was not there and warrants reversal. We find that these facts do not prove that Appellant did not take part in the burglary. The jury easily could have found or inferred from the evidence presented to it that both Danny and Dennis Fisher committed the burglary. Witness Martin stated unequivocally that the person he saw at Williams' residence on the day in question was Appellant and not his brother Dennis. Appellant now complains that the photographic lineup which Martin viewed in making his identification of Appellant may have been unduly suggestive. At the time of Martin's testimony, however, Appellant offered no objection and accordingly waived his right to argue this point. *Owens v. State,* (1981) Ind., 427 N.E.2d 880, *reh. denied* (1982); *Stubblefield v. State,* (1979) 270 Ind. 421, 386 N.E.2d 665; *see also Maclin v. State,* (1979) 271 Ind. 606, 394 N.E.2d 163. Finally and in regard to Malcolm Wade's testimony, it is well settled that the testimony of an accomplice is sufficient to support another's criminal conviction. *Menefee, supra; Bentley, supra.* Inconsistencies in the testimony of any or all of the witnesses were within the province of the jury to work out as the jury decided Appellant's guilt or innocence. The jury heard all of the evidence in this case and arrived at its guilty verdict. It had more than sufficient direct and probative evidence to find Appellant guilty beyond a reasonable doubt of burglary. We will not substitute our judgment for that of the jury.

Finding no reversible error, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.