**Michael A. SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1084S409.

Supreme Court of Indiana.

April 1, 1986.

Sheila Suess Kennedy, Mears Crawford Kennedy & Eichholtz, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Michael A. Smith appeals his conviction entered after a jury trial for robbery, a class B felony. Ind.Code § 35–42–5–1 (1979 Burns Repl.). The judge sentenced Smith to a term of twenty years imprisonment. Smith raises the following four issues in this direct appeal:

1) Whether there was sufficient evidence to support a verdict of guilty of robbery;

2) Whether the trial court erred in denying Smith's motion for continuance

made on the morning of the first day of trial;

3) Whether Smith was denied effective assistance of counsel;

4) Whether the twenty year sentence imposed by the trial court was manifestly unreasonable.

These are the facts which support the conviction. On the evening of March 24, 1983, two black males entered the Kentucky Fried Chicken Restaurant at 2515 East 38th Street in Indianapolis. Roselyn Bland, who testified she was a sales hostess at the restaurant, turned from the counter to fill an order for the men. When she turned back to the counter, one man confronted her with a gun and told her that he didn't want to harm her, all he wanted was money. In emptying the cash register, Bland was able to activate a surveillance camera, which photographed the subsequent events.

The second man leapt over the counter and went into the manager's office. Manager Paul Jensen testified that he was approached from behind and saw a gun at the side of his head, but did not see the perpetrator. He was ordered not to turn around, to open the safe, and to remove the contents. He did so, then followed the perpetrator's instructions to lie face down on the floor.

Bland and Shoron Bushrod, another Kentucky Fried Chicken employee on duty at the drive-through window that evening, saw the second man emerge from the manager's office with a bag in one hand and a gun in the other. He leapt over the counter and both men fled.

Appellant Smith's name was mentioned to Indianpolis Police Officer Barry Jeffries by another Kentucky Fried Chicken employee who, though not present at the time of the robbery, recognized Smith from the surveillance photographs. Shortly thereafter, Officer Jeffries exhibited a photographic array of six photographs to Bland and Bushrod. Each independently identified a photograph of appellant as the man who jumped over the counter. Both Bland and Bushrod also recognized Smith as a person familiar to the neighborhood and recognized his name when it was mentioned later. Bushrod later identified appellant as the perpetrator of a robbery she witnessed at the same Kentucky Fried Chicken restaurant in July, 1983.

Appellant was apprehended on July 30, 1983. After being advised of his *Miranda* rights and signing a waiver form, appellant gave a statement admitting he participated in the March robbery and the uncharged July robbery.

At trial, both Bland and Bushrod identified the appellant without objection. The court admitted, without objection, State's Exhibits 3–8, the photographic array, and State's Exhibit 2, the surveillance photographs. The court also admitted State's Exhibit 11 and 12, appellant's statements, over Smith's objection challenging the authenticity of his signature. Officer Jeffries, however, identified Smith as the person who had given and signed the statements.

### I. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence to sustain a conviction for robbery. In reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility, but look to the evidence and the reasonable inferences to be drawn therefrom which support the verdict. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298, 1307; *Stewart v. State* (1985), Ind., 474 N.E.2d 1010, 1011.

Appellant bases his argument on the hypothesis that the photographic array from which Smith was identified was impermissibly suggestive. Appellant argues that, absent the allegedly tainted pre-trial identification, he would not have been arrested nor would his confessions have been elicited. Therefore, appellant concludes, his confessions were also tainted and should have been excluded.

■ As appellee points out, any challenge to the identification procedure has been waived by the failure to make an objection at trial or to raise the issue in the Motion to Correct Errors. *Hunt v. State* (1983), Ind., 455 N.E.2d 307; *Johnson v. State* (1983), Ind., 446 N.E.2d 1307, *Watkins v. State* (1983), Ind., 446 N.E.2d 949. Moreover, it appears that such an objection would have been unavailing.

■ In assessing whether a photographic array should be admitted, the question is whether, considering the totality of the circumstances, the array was impermissibly suggestive and conducive to a mistaken identification. *Henson v. State* (1984), Ind., 467 N.E.2d 750, 752. This array contains photographs of six black males, all of relatively similar age, with similar hairstyles and similar general appearance. However, as appellant points out, Smith is the only man who appears clean-shaven. Others appear with light mustaches, goatees and full beards. Smith is also the only subject to display a bruise below his right eye.

In *Harris v. State* (1981), Ind., 427 N.E.2d 658, this Court considered a photographic array in which only two subjects, the defendant and another man, appeared clean-shaven. In dicta, Chief Justice Givan said: "We fail to understand how that is to be viewed as unduly suggestive, *so long as more than one person in the display was clean-shaven.*" *Id.* at 661 (emphasis added).

An earlier case also considered an array containing only two photographs of clean-shaven men. However, both clean-shaven men were co-defendants in the case. In holding that such an array was not unduly suggestive, Justice Pivarnik said: "Some differences can be found in any set of six photographs of persons falling within a general description. It does not appear that the differences here are any greater than might be found in any set of photographs showing six other persons." *Shepard v. State* (1980), 273 Ind. 295, 404 N.E.2d 1, 6.

The fact that five subjects in the array had facial hair and Smith did not might naturally lead one to the idea that the array was unduly suggestive. However, a review of the exhibit itself indicates that this distinction was not so sharp that it was likely to lead to a misidentification. In several photographs, the facial hair displayed by the subjects is not obvious, and Smith's photograph requires close inspection to determine that he is clean-shaven. Smith's bruise is little more than a small, barely discernible discoloration. The witnesses were not informed that a suspect's photograph was included in the array, and each independently chose Smith's photograph. Moreover, both witnesses knew they had seen Smith before. The likelihood of misidentification was minimal.

■ Even if the array could be regarded as unduly suggestive, sufficient evidence remains to support Smith's conviction. The surveillance photographs showed Smith committing the crime and the in-court identification by Bland and Bushrod had adequate independant bases. Given all this, it is not surprising that trial counsel did not object to the introduction of the array at trial. The evidence identifying Smith as one of the perpetrators was overwhelming.

## II. Continuance

Charges against Smith were filed on March 13, 1983, and counsel was appointed to represent him on August 3, 1983. Smith's motions for continuances on January 18, February 8, and March 19, 1984 were granted. Two joint motions for continuances were also granted. After several changes in representation, attorney Bookwalter was appointed to represent Smith on January 25, 1984.

Prior to the impaneling of the jury, defense counsel, at Smith's request, moved for a continuance. Smith's primary concern was that depositions had been taken the preceeding Friday, and he felt that more time was required to review them. Defense counsel, however, indicated that the depositions had not provided any surprises, and that the testimony had been

consistent with the discovery provided earlier by the State. He stated that he was prepared to go to trial. The motion for a continuance was denied.

Shortly thereafter, during preliminary proceedings, defense counsel again moved for a continuance, pointing out that prospective jurors had commented on the fact that Smith had fallen asleep more than once. Counsel further requested that the judge inquire about any health problems or narcotic involvement which might affect Smith's attentiveness. The judge did so. Smith disavowed any drug use and said he was "just tired." He continued to maintain, however, that a continuance was needed due to lack of preparation. This second motion for continuance was denied.

Appellant alleges error in the denial of his motions for continuances. The granting or denying of a motion for a continuance is within the discretion of the trial court. Denial of such motion constitutes reversible error only when that discretion is abused. To demonstrate an abuse of discretion, the record must show that the defendant was prejudiced by the denial of the motion. Ind.R.Tr. P. 53.5; *Hunt v. State* (1983), Ind., 455 N.E.2d 307, 313; *Downer v. State* (1982), Ind., 429 N.E.2d 953, 954; *Harris v. State* (1981), Ind., 427 N.E.2d 658, 660–61. Continuances to allow for more time are not favored. *Downer,* 429 N.E.2d at 954.

Appellant argues that Smith's drowsiness could have prevented him from assisting counsel in his defense. This might have led Smith to "miss portions of the testimony he could have challenged through counsel." Appellant further speculates about the conclusions the jury might have drawn from observing Smith's behavior.

Such speculation is not sufficient to show that Smith was prejudiced by the denial of the motion for continuance. No other incidents of drowsiness occurred. In fact, Smith participated actively in choosing his own defense strategy. Which testimony Smith might have challenged successfully is not apparent from the record.

A specific showing of the manner in which the additional time requested would have aided appellant must be made in order to show an abuse of discretion on the part of the trial court. *Downer,* 429 N.E.2d at 954. Smith had adequate time to prepare a defense and to appear well-rested for trial. The trial court was well within its discretion in denying appellant's motions for continuances.

### III. Ineffective Assistance

Smith claims that his trial counsel did not represent him effectively. Our standard of review for such claims derives from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Price v. State* (1985), Ind., 482 N.E.2d 719. First, appellant must overcome a presumption of competence to show that his attorney's performance was defective, and, second, he must demonstrate that the defense was prejudiced by the deficient performance. *Id.*

In support of his claim of ineffective assistance, appellant alleges several errors committed by counsel. First, he points out that counsel failed to object to the allegedly suggestive photographic array. As indicated above, we conclude that counsel might well have decided that such an objection would be to no avail.

Appellant also charges trial counsel was ineffective because he failed to present any evidence in Smith's behalf. However, Smith elected not to testify in his own behalf and has not shown what evidence could have been presented. Further, it is apparent that trial counsel did have a strategy for the defense: he effectively cross examined witnesses on the theory that other robberies of the same restaurant were under investigation by police as "inside" conspiracies.

Smith complains of trial counsel's failure to "raise the issue of coercion or inducement regarding the confession when no logical reason for giving a confession was shown." No "logical reason" for giv-

ing a confession need be shown. Smith was informed of his *Miranda* rights and there is absolutely no indication of coercion or inducement.

 Likewise, appellant's argument that counsel was ineffective for failure to object to the denial of Smith's motion for a line-up is without merit. The granting of a line-up at the defendant's request, like other discovery matters in criminal cases, is largely a matter within the discretion of the trial court. *Glover v. State* (1982), Ind., 441 N.E.2d 1360, 1363. In this case, where identification evidence included the independent identification of two eye witnesses as well as surveillance photos, the court was within its discretion in denying Smith's motion for a line-up.

 Finally, appellant urges that counsel's failure to object to the admission of State's Exhibit 11, Smith's confession to a similar robbery of the same restaurant, constitutes ineffective assistance. Though evidence of criminal activity other than that charged is generally inadmissible on the question of guilt, the evidence may be admissible to show intent, motive, purpose identification or common scheme or plan. *Parker v. State* (1981), Ind., 425 N.E.2d 628, 633. Evidence that Smith later committed a robbery at the same restaurant was admissible to bolster the identification of Smith as the perpetrator of the charged crime. Thus, an objection to the admissibility of the confession would not have been successful.

Under these circumstances, appellant received effective assistance of counsel.

### IV. Sentence

 Appellant argues that his sentence of twenty years was excessive. The scope of review for such claims is defined by Indiana Rules for Appellate Review of Sentences 2: a sentence authorized by statute will not be revised except where such sentence is manifestly unreasonable; a sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate. The sentence authorized by statute for a class B felony is a presumptive term of ten years, with the possible addition of ten years for aggravating circumstances. Ind. Code § 35–50–2–5 (1979 Burns Repl.). Among other factors, the court may consider criminal history and the need for rehabilitative treatment as aggravating factors. Ind. Code § 35–50–1A–7(c)(2), (3) (1979 Burns Repl.).

In considering aggravating circumstances, the trial judge found as follows:

1. Defendant has a history of criminal activity. Criminal history listed in pre-sentence report is to be incorporated as aggravating factor.

2. Short term incarceration has proven to be no deterrent to defendant's criminal activity, therefore Court feels long term incarceration is now necessary for purpose of rehabilitation.

3. Information provided to the court shows defendant has history of carrying handgun without a license and there's a risk defendant will commit other offenses which will result in serious bodily injury.

4. This is the type of case, in order to protect society, court is imposing maximum sentence.

Appellant argues that the court erred in failing to distinguish mere arrests from actual convictions in Smith's criminal history. However, we note that Smith's criminal history as recited by the pre-sentence report and by the trial judge at sentencing includes at least two prior felony convictions. Such convictions, together with the other aggravating factors found by the court, are sufficient to support the imposition of an aggravated sentence. The sentence is within the parameters authorized by statute and is not manifestly unreasonable.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.