David SCOTT, Appellant,

v.

STATE of Indiana, Appellee.

No. 1085S412.

Supreme Court of Indiana.

July 16, 1987.

Larry J. Wagner, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant for Burglary, a Class A felony, and Murder While Committing a Burglary. He received a thirty (30) year sentence for burglary and a forty (40) year sentence for murder, enhanced by ten (10) years by reason of aggravating circumstances, for a total term of eighty (80) years imprisonment.

The facts are: On the evening of April 18, 1984, appellant, a juvenile, and his companion decided to burglarize the home of an 89-year-old woman for whom appellant had done odd jobs. Appellant broke the window of her back door with an iron bar and entered the home with his partner to look for money. Both were under the influence of heroin. As appellant searched the home, he discovered the woman lying in bed, awake. She recognized appellant, so appellant beat her in the head with the iron bar.

Appellant and his partner left the victim's home and went to the partner's home, where appellant took a bath and burned his bloodstained clothes. At this time, appellant talked his partner into believing that he, not appellant, murdered the victim.

Next they went back to the victim's home, covered the body with an electric blanket and turned it on so that it would keep the body warm. Appellant was hoping this would delay the time of her death estimated by investigators.

Appellant then convinced three companions to assist him in the burglary of the West Vigo High School that night, so that he could confess to the burglary and have an alibi for any murder charges, which might come against him. Before he burglarized the school, appellant returned to the victim's home and removed the blanket, which he later burned.

Appellant and his three companions broke into the high school and removed some audiovisual equipment. The next day the victim's son discovered her body and called the police.

The police soon received an anonymous call and were told where to find the stolen audiovisual equipment, and that appellant was involved in the burglary of the school. Police arranged for an interview with appellant, which occurred on April 21 with his mother present. After appellant was advised of his rights, he signed a rights waiver. He then described the burglary of the school in detail and confessed.

The following September Clifford Allison had conversations with appellant about the murder which led Allison to believe appellant was involved. Allison contacted police and set up a meeting with them. At the meeting, Allison informed police that he knew who murdered the victim, and that he would divulge this information if police would help him with the theft by deception charges pending against him in Illinois. Although police told Allison that they could not help him, Allison agreed to assist the police anyway.

Allison hired appellant as an employee in his extermination business. He arranged a time and place with police in which he planned to discuss the murder with appellant. Police reserved a hotel room in Indianapolis and placed a microphone in the room so that police could record their con-

versation. Allison and appellant arrived at the hotel room on September 25 and their conversation eventually turned to the subject of the murder. Allison convinced appellant that he must tell him the truth so that they could trust each other. Appellant then told in explicit detail the events of the break-in, murder and burglary of the school. Appellant cried as he told about the beating of the victim.

Appellant was arrested on September 27, 1984. Prior to trial, appellant filed a motion to suppress his confession of the murder, which was denied. He claimed the use of his taped confession violated his Sixth Amendment right to counsel, and that he did not knowingly and fully waive his *Miranda* rights.

█ The Sixth Amendment right to counsel attaches only after a critical stage of the proceeding has been reached. *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; *Edwards v. State* (1976), 265 Ind. 239, 352 N.E.2d 730.

In *United States v. Hansen* (7th Cir. 1983), 701 F.2d 1215, the Seventh Circuit held that the defendant's Sixth Amendment right to counsel did not attach until after adversary judicial proceedings were initiated against him. The defendant's taped, inculpatory statements made before his arraignment were correctly admitted into evidence because his right to counsel had not yet attached at the time his statements were taped. *Id.* at 1220.

Similarly, the Seventh Circuit has held that mere interrogation of a suspect before the filing of any charge does not bring the Sixth Amendment right into play. *Sulie v. Duckworth* (7th Cir.1982), 689 F.2d 128.

The cases which appellant cites to support his position are factually distinguishable from his own. In *United States v. Henry* (1980), 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115, the Supreme Court held that the government had intentionally created a situation likely to induce the defendant to make incriminating statements without counsel. The informant was paid by the government, he was a fellow inmate, and the defendant was in custody and under indictment when he divulged information to the informant.

In the case at bar, appellant was not in jail or in police custody or confinement when his conversation about the murder occurred. In *United States v. Reynolds* (6th Cir.1985), 762 F.2d 489, the defendant met with an undercover police officer whom he believed to be a private purchaser of his trucks. The meeting was videotaped by Kentucky State Police in an unmarked van at a truck stop. The undercover officer was wired with a transmitter. When the parties met, the defendant suggested that they go into his car to talk. In the car, he made a number of incriminating statements. At the end of the conversation, the undercover officer executed an arrest warrant which he had in his possession. After reciting the above facts and citing several United States Supreme Court cases, the Court stated:

"In the present case it is clear that defendants were unaware of the existence of warrants for their arrest or that their freedom of movement would be curtailed by police. Since the warrants were unknown to defendants, their existence could not have affected how the defendants understood their position, which is the only relevant consideration under *Berkemer.* [*Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317]. Reasonable men in the defendants' position would have felt free to leave at any time. Defendants were therefore not in custody and were under no compulsion when the incriminating statements were made. Introduction of the recordings did not violate the fifth amendment." *Id.* at 493.

█ The facts in the case at bar are very similar. Appellant was not deprived of his Sixth Amendment right to counsel when he gave his non-custodial confession before charges regarding the murder were filed.

Appellant further argues that the confession should not have been admitted because the procedural safeguards for the waiver of a juvenile's constitutional rights, as required by Ind.Code § 31–6–7–3, were not followed.

■ Because appellant was not in custody or deprived of his freedom when he confessed to the murder, neither the safeguards of the *Miranda* warning nor Ind. Code § 31–6–7–3 applies to him. *See Flowers v. State* (1985), Ind., 481 N.E.2d 100.

Appellant prays that we void the sentence of fifty (50) years for the felony murder because it is manifestly unfair, disproportionate and unconstitutional. This Court reviews a sentence to determine whether it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; Ind.R. App.Rev.Sen. 2(1).

■ A punishment is excessive and unconstitutional if it constitutes nothing more than the purposeless and needless imposition of pain and suffering, or is grossly out of proportion to the severity of the crime. *Bray v. State* (1982), Ind., 430 N.E.2d 1162.

At appellant's trial, the judge found as aggravating circumstances appellant's long history of criminal and violent acts, both as a juvenile and an adult, the age and vulnerability of the victim, the brutal nature of the killing and the fact that appellant showed no remorse and stated that he could kill again.

■ The penalty for murder is a fixed term of forty (40) years with not more than twenty (20) years added for aggravating circumstances. Ind.Code § 35–50–2–3. The trial court specified the factors in the record which constituted the aggravating circumstances. Appellant's sentence of fifty (50) years for the murder was not unreasonable in light of the nature of the offense and character of the offender.

Appellant complains that the trial court committed reversible error by refusing to grant his motions for mistrial during the prosecutor's summation. Twice the prosecutor mentioned that appellant could commit crimes in the future, and both times the court admonished the jury to disregard the statements regarding the possibility of appellant's future misdeeds.

The granting of a mistrial lies within the sound discretion of the trial court and will be reversed only upon a showing of clear error. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090. A mistrial is an extreme remedy and is warranted only where lesser curative measures will not suffice. Even if error occurred, it may be harmless if the conviction was otherwise supported by independent evidence. *Wallace v. State* (1985), Ind., 486 N.E.2d 445.

■ The jury already had heard considerable evidence of appellant's involvement in the crimes, which outweighed any harm caused by the references to his possibility of future criminal activity. The prosecutor's statements did not place appellant in a position of grave peril to which he should not have been subjected. *See Coble v. State* (1985), Ind., 476 N.E.2d 102.

■ Normally, an admonishment to the jury is considered adequately curative and will support a trial judge in his denial of a mistrial. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153. The trial court did not abuse its discretion by denying appellant's motions for mistrial.

Appellant claims that the trial court erred in failing to grant a new trial upon the basis of newly-discovered evidence. This evidence is a statement obtained from a Thomas Abrams in which he reported a different story about the victim's murder. He testified that he and his companion, Mark Weeks, needed money, so Weeks broke into the victim's home while Abrams drove around the block. Abrams stated he walked up to the house and heard screaming, and he returned to his car. Soon Weeks came out of the house with a trash bag full of letters, money, jewelry and papers. Abrams said the victim's name was on the letters.

Relief by a new trial is authorized in Ind.R.Tr.P. 59(A)(6). To gain such relief, the evidence must meet a nine-part test: "(1) [T]hat the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the

evidence is worthy of credit; (8) that it can be produced on a retrial of the case; and (9) that it will probably produce a different result." *Wiles v. State* (1982), Ind., 437 N.E.2d 35, 39.

 Motions for a new trial predicated upon newly-discovered evidence are viewed with disfavor. The disposition of such motion is a matter within the discretion of the trial court. *Helton v. State* (1980), 273 Ind. 211, 402 N.E.2d 1263. In order for newly-discovered evidence to warrant a new trial, it must be such as to raise a strong presumption that, in all probability, it would produce a different result upon a retrial. *Wiles, supra* at 40.

We have been given no reason to find that all nine parts of the test are satisfied. Appellant has not shown when the evidence became available to him to establish that it was discovered after the trial. Also, appellant did not demonstrate what due diligence he used to discover the evidence before trial or why the evidence is worthy of credit. Appellant has not shown that the evidence can be produced if a retrial were granted. We have not been convinced by appellant that the new evidence would probably produce a different result upon retrial. We hold the trial court did not err in denying appellant a new trial based on newly-discovered evidence.

Finally, appellant urges that the trial court erred in sentencing him under both burglary and felony murder convictions.

The State argues that we should follow *Wagner v. State* (1985), Ind., 474 N.E.2d 476 and affirm the sentences for both burglary and murder to run consecutively.

In *Wagner*, the defendant was found guilty of Robbery, a Class A felony, Burglary, a class A felony, and Murder, not Felony Murder. In such a charge, the State must prove each element of each offense separately and the defendant may be sentenced with separate terms.

Count I of appellant's indictment charged him with burglary and theft, violations of Ind.Code §§ 35-43-2-1 and 35-43-4-2 respectively. Count II charged him with murder and burglary, violations of Ind.

Code §§ 35-42-1-1(2) (felony murder) and 35-43-2-1 respectively.

When an indictment for murder in the commission of a felony is filed under Ind.Code § 35-42-1-1(2), the indictment may include an additional count for the felony itself. *Biggerstaff v. State* (1982), Ind., 432 N.E.2d 34. If the defendant is convicted of the felony murder, merger occurs and the defendant may not be sentenced on both counts. *Id.* Therefore, it was improper to impose a separate sentence for the burglary. *Tyson v. State* (1979), 270 Ind. 458, 386 N.E.2d 1185.

The trial court is affirmed in part and reversed in part. The cause is remanded for proper sentencing.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.