David McDONALD, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8802–PC–204.

Supreme Court of Indiana.

Aug. 11, 1989.

Reginald B. Bishop, Roberts & Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of two counts of Robbery, both Class A felonies, for which he received two thirty (30) year sentences to be served concurrently.

The facts are: On the evening of December 8, 1986, Larry Hatfield and Amy Hall were walking near the intersection of Washington and Grant streets in Indianapolis. Appellant walked toward them holding a gun and told them to get up against the fence. He pointed the gun at Hatfield and Hall, and another man walked up. The other man put his knife to Hatfield's throat and told him he would cut him if he moved. Appellant demanded their money so they gave them what they had, then Hatfield was stabbed in the leg. The men ran away and the victims called the police.

■ Appellant argues reversible error occurred when the trial court allowed certain jurors to separate during the trial. Two of the fourteen jurors were smokers who were allowed to smoke in a certain area of the building during recess. Also in the area were prosecutors, detectives, par-

ents of witnesses, witnesses, and other people. Appellant believes he was prejudiced because the jurors were allowed to mingle with other people who were involved with his case.

The record shows that upon appellant's objection, the trial court asked both jurors individually whether they had heard any conversation from others about the case while they were smoking. Both jurors answered that they had heard nothing about the case. In *Woods v. State* (1954), 233 Ind. 320, 119 N.E.2d 558, this Court reversed a conviction because the jury was allowed to commingle with witnesses and spectators during recesses. The Court observed that although there was no evidence that the case was discussed at such times, there was evidence that the jurors fraternized with those present. The Court held:

"The conduct of witnesses in visiting with the jury was prima facia prejudicial to appellant, and for this cause the judgment must be reversed." *Id.* at 324, 119 N.E.2d at 561.

However, in the case at bar, there is no evidence of any communication between the jurors and others present in the hall. Since *Woods*, this Court has held that conduct must be shown that would at least imply prejudice and that casual greetings between jurors and witnesses do not alone constitute such prejudice. *See Oldham v. State* (1967), 249 Ind. 301, 231 N.E.2d 791. Because appellant has not demonstrated that he was prejudiced, we find no reversible error. *McMurry v. State* (1984), Ind., 467 N.E.2d 1202.

■ Appellant contends the trial court should have granted his motion for mistrial when the prosecutor interjected an evidentiary harpoon. During the examination of an investigating officer, the prosecutor asked him whether he had occasion to talk to some witnesses while at the scene of the crime. The officer replied affirmatively and the prosecutor then asked whether any were able to give information about the identification of the perpetrators. Appellant objected on hearsay grounds and the State responded, "Judge, it is simply in the negative that that ...[.]" Appellant then

asserted that the prosecutor's comment was a deliberate evidentiary harpoon because she answered her own question in front of the jury. However, in the absence of the jury, the prosecutor explained that the answer would be that the officer learned nothing from such interviews.

The granting of a mistrial lies within the sound discretion of the trial court and will be reversed only upon a showing of clear error. A mistrial is an extreme remedy and is warranted only where lesser-curative measures will not suffice. *Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied*, 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490.

■ An evidentiary harpoon is the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jury against the defendant. *Pinkston v. State* (1982), Ind., 436 N.E.2d 306.

Appellant's motion for mistrial was denied because the trial court did not believe the prosecutor's comment was a deliberate evidentiary harpoon. Appellant has not presented a basis for a finding that the prosecutor's comment was a deliberate attempt to bring inadmissible evidence before the jury. Any prejudice appellant may have suffered from the response does not rise to the level of justifying a mistrial.

■ Appellant claims his photographic lineup was unduly suggestive. He cites a portion of the record in which Hall was asked whether she went to the police station to "identify the people who robbed [her]." She said, "Yes." Appellant claims the police suggested to her that the person who robbed her was present in the photographic lineup.

■ Appellant is correct that it is impermissibly suggestive to inform a witness that the suspect's photograph is in the lineup. *Maclin v. State* (1979), 271 Ind. 606, 394 N.E.2d 163. However, Hall was asked whether, when she was at the police station, she had the idea that the picture of the person who robbed her was going to be there and she said she had no idea; all she knew was that she was supposed to go to the station and try and identify the people

who robbed her. She never looked at a single photograph by itself, and upon viewing a set of photographs, she was asked whether she saw anyone who might look familiar to her. The record does not bear out appellant's claim that police suggested to Hall that her attacker was in the lineup.

■ Appellant also argues the lineup was unduly suggestive because the other subjects were physically dissimilar to him. He claims he was the only subject with light hair and glasses, and as a result, it was obvious that he was the perpetrator.

In assessing whether a photographic array should be admitted, it must be determined whether, considering the totality of the circumstances, the array was impermissibly suggestive and conducive to a mistaken identification. *Smith v. State* (1986), Ind., 490 N.E.2d 748. The lineup contained six photographs of young, white, clean-shaven men. In the photograph, appellant's hair appears to be light brown; the other subjects also have light brown hair, though some were slightly lighter or darker than appellant. No subject, including appellant, wore glasses in the photographs. We find no merit to appellant's claim that the subjects were so dissimilar in appearance that the lineup was unduly suggestive.

■ Appellant argues the corporal lineup was unduly suggestive because the police failed to ensure that the witnesses could not collaborate before and during the lineup. He claims he was prejudiced because Hall and Hatfield were allowed to sit together in the hall before the lineup. Also, he believes Hall was influenced during the lineup when Hatfield stood up to take a closer look at appellant after appellant spoke. The record shows Hatfield returned to his seat and circled on his paper the figure representing appellant in the lineup. Appellant concludes that the improper lineup and admission of the testimony concerning the identification of him violated his constitutional right to due process.

■ In order to present a basis for an argument that a pretrial identification was impermissibly suggestive, it must be shown that law enforcement personnel or the prosecution were responsible for the circumstances giving rise to the claim. *Robertson v. State* (1981), Ind., 429 N.E.2d 258.

Hall testified that during the lineup she went over everything that happened in her head to be sure that the person she was choosing was the robber. She stated that she had no question at the time of the lineup or during her in-trial identification of appellant that he was their attacker. Appellant was represented by counsel during the lineup who presumably was available to object to any improper procedure. No evidence exists that Hall and Hatfield colluded to choose appellant in the lineup. It would be mere speculation to conclude that either had not made an independent identification. We find no error in the admission of evidence concerning the lineup.

■ Appellant argues he should not have been convicted of two counts of robbery. Although money was taken from both parties, Hall testified that the money they were carrying belonged to both herself and Hatfield. Appellant reasons that he took money from them as a couple, which is a single entity, so he could be convicted of only one count of robbery at most. He cites cases involving the single larceny doctrine to support his position.

A person who intentionally takes property from another person by using or threatening the use of force or by putting any person in fear commits robbery. Ind.Code § 35–42–5–1. The record shows that appellant took the property of Hall by threatening the use of force and took the property of Hatfield by using force and causing him to be stabbed. We hold that two separate robberies occurred and appellant was properly convicted of two counts. *Parks v. State* (1986), Ind., 489 N.E.2d 515; *Howard v. State* (1984), Ind., 459 N.E.2d 29.

■ Appellant argues the trial court erred in elevating both his robbery convictions to a Class A status based on the single stabbing of Hatfield.

Indiana Code § 35–42–5–1 states that robbery becomes a Class A felony if it results in serious bodily injury to any person other than a defendant. Count I of the information alleged that appellant took

property from Hatfield by putting him in fear, threatening to use force on him, and stabbing him. Count II alleged that appellant took property from Hall by putting her in fear, threatening to use force on her, and stabbing Hatfield, and he was charged with two Class A felonies. Appellant believes he was subjected to double jeopardy by the imposition of two Class A felony convictions based upon a single stabbing.

In *Flowers v. State* (1985), Ind., 481 N.E.2d 100, this Court ordered appellant's Class A convictions of burglary, attempted rape, and attempted robbery to be vacated and entered as Class B convictions, because he also had been convicted of attempted murder based on the same injury to the same victim which was the basis of the elevation of his other convictions to Class A status. We held such multiple punishment violated double jeopardy principles. *Id.* at 105–07.

Appellant was punished once for stabbing Hatfield by receiving a Class A conviction under Count I, and again under Count II. We agree with appellant that the elevation of his conviction to Class A for the single stabbing of one victim in both Count I and Count II subjected him to multiple punishment for the same injury. *Id.; King v. State* (1988), Ind., 517 N.E.2d 383.

We remand with instructions to vacate appellant's conviction and sentence for Class A robbery under Count II and to enter his conviction and appropriate sentence for Class B robbery under that count. In all other things the trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., concurs in all issues except the finding by the majority that there was double jeopardy in finding defendant guilty of a Class A felony in Count II and dissents to this finding for reasons stated in his dissent in *Bevill v. State* (1985), Ind., 472 N.E.2d 1247.