

FILED

Apr 22 2015, 7:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryson Tyrone Street,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 22, 2015

Court of Appeals Case No.
21A04-1410-CR-458

Appeal from the Fayette Circuit
Court

The Honorable Beth A. Butsch,
Judge

Cause No. 21C01-1406-FA-338

**Najam, Judge.**

## Statement of the Case

Bryson Tyrone Street appeals his convictions and sentence after a jury found him guilty of the following offenses: burglary, as a Class A felony; attempted robbery, as a Class A felony; attempted robbery, as a Class B felony; battery, as a Class C felony; carrying a handgun without a license, a Class C felony;

criminal recklessness, as a Class D felony; neglect of a dependent, as a Class D felony; possession of marijuana, as a Class A misdemeanor; and to being an habitual offender. Street raises five issues for our review, which we consolidate and restate as the following four issues:

1.  Whether some of Street's convictions are prohibited under Indiana double jeopardy law;

2.  Whether the trial court committed fundamental error in the admission of certain evidence;

3.  Whether the State presented sufficient evidence to support Street's conviction for neglect of a dependent, as a Class D felony; and

4.  Whether the trial court erred when it sentenced Street for being an habitual offender.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Michael Corn and his girlfriend, Bria Benjamin, lived together in Connersville with their two-year-old son. Corn and Benjamin became acquainted with Street around March of 2014. Between March and June, Street visited Corn and Benjamin's home "about ten" times. Trial Tr. at 157.

Around 8:00 a.m. on June 11, 2014, Corn, Benjamin, and their son were awoken by someone kicking in their back door. A neighbor observed "a chubby person in a gray hoodie," blue jeans, and with "a bandana around the[]

face" kicking in Corn and Benjamin's door. *Id.* at 136. The neighbor called the police.

[5] Meanwhile, Corn exited the family bedroom to investigate the noise at his door. Corn met an African-American man in the kitchen, and Corn observed that the man was wearing a gray hoodie, blue jeans, a bandana around his face, and blue gloves. Although the man's face was covered, Corn recognized him as Street based on "his voice and his shape and the way" he talked. *Id.* at 168. In the bedroom, Benjamin also heard and recognized Street's voice. Street demanded Corn's money, and when Corn stated that he did not have any, Street instead grabbed Corn's marijuana off of a kitchen counter. Street then pulled out a .25 caliber handgun and shot Corn in the thigh. Another shot struck the kitchen wall. Street fled before the police arrived.

[6] When the police arrived, Corn and Benjamin were initially reluctant to identify Street. But they did so later on June 11, and officers obtained and executed a warrant to search Street's residence later that day. In executing the warrant, officers seized .25 caliber ammunition, a grey sweatshirt, blue jeans with blue gloves stuffed inside them, and bandanas. The officer also seized firearms, which included a loaded .22 caliber revolver, found inside of a pillow case on Street's bed. Street had lived at that residence "for a few months" and shared the residence with his girlfriend, Iva Fine; Fine's daughter, T.A.F.; and Fine's

grandson, J.T.[1] Street, Fine, and J.T. all slept in the same bed. Appellant's Br. at 10. T.A.F. "look[ed] to [Street] as a father figure." Trial Tr. at 428.

[7] Officers arrested Street. In the booking room of the police station, while officers were conducting a pat-down of Street, a .25 caliber handgun "fell out of his groin area." *Id.* at 455. Officers also discovered a small bag of marijuana "in the groin area of Mr. Street." *Id.* at 457. Later ballistics testing revealed that the shots fired inside Corn and Benjamin's residence were fired from the .25 caliber handgun that had fallen out of Street's "groin area" during his booking. *Id.* at 455.

[8] On July 15, 2014, the State filed its amended charging information against Street, in which the State alleged that Street had committed the following offenses:

- Count I: burglary, as a Class A felony, on the grounds that Street "did break and enter the building or structure of [Corn and Benjamin] . . . with the intent to commit a felony and said act resulted in bodily injury" to Corn;
- Count II: attempted robbery, as a Class A felony, on the grounds that Street "did knowingly or intentionally attempt to take property, to-wit: U.S. Currency from . . . Corn[] by use of force or threat of force and said conduct resulted in serious bodily injury" to Corn;

---

[1] We note that T.A.F. is not J.T.'s mother.

- Count III: attempted robbery, as a Class B felony, on the grounds that Street "did knowingly or intentionally attempt to take property, to-wit: U.S. Currency from . . . Corn[] by use of force or threat of force, while armed with a deadly weapon or resulting in bodily injury" to Corn;

- Count IV: battery, as a Class C felony, on the grounds that Street "did knowingly touch [Corn] in a rude, insolent, or angry manner; by means of a deadly weapon, to wit: gun";

- Count V: criminal recklessness, as a Class D felony, on the grounds that Street "did recklessly, knowingly, or intentionally[,] with a deadly weapon, to wit: gun, perform an act that created a substantial risk of bodily injury" to Corn, Benjamin, and/or their son, namely, "Street fired one or more gunshots inside the residence";

- Count VI: neglect of a dependent, as a Class D felony, on the grounds that Street, "having the care of J.T . . . a dependent, did knowingly place said dependent in a situation that endangered the dependent's life or health";

- Count VII: carrying a handgun without a license, a Class C felony; and

- Count VIII: possession of marijuana, as a Class A misdemeanor.

Appellant's App. at 52-53. The State also alleged Street to be an habitual offender.

[9] During Street's ensuing jury trial, in addition to evidence showing the above facts, the State played two video recordings to the jury. In one, Fine stated that Street "'just did six years'" and, in the other, another person, Marcus Armstead,

stated that "the last few days were the most he'd seen Mr. Street in ten years because Mr. Street had been in jail." Appellant's Br. at 5 (quoting State's Exs. 18 & 19). Street did not object to the admission of those recordings, but, after the jury had viewed them, Street requested an admonishment to the jury. The trial court agreed, stating:

> I am admonishing you[,] that means I'm telling you, that you are not to consider and to regard as if you have never heard any remarks of any of those people with regard to Mr. Street and whether or not he has ever had a prior conviction of any kind or has ever been in prison. If you heard anything like that, it's as if you never heard. You are to completely disregard it.

Trial Tr. at 285. Street did not request a mistrial following the admonishment.

[10]  In the State's closing argument, the prosecutor discussed how the evidence related to Counts I through V in reverse order as follows:

> Criminal recklessness [Count V] . . . [is] based upon the facts that [Street] fired the gun where [Corn, Benjamin, and J.T. lived]. That was an act . . . creating a substantial risk of injury. . . . That is (inaudible) by a deadly weapon . . . Count IV [Count IV alleged Class C felony battery by a deadly weapon]. Why did he come here? Money (inaudible). [Corn] admitted he sold marijuana. . . . [Street] went there[,] he came in and . . . said where's it at, where's it at. . . . [Corn] . . . said that [Street had] said where's the money, where's the money but remember (inaudible) because you know I have a bag of weed (inaudible). But the money wasn't right there on the table in the kitchen. So [Street] comes in, kicks through the door . . . and then when he demanded money and doesn't get [it] he . . . fires (inaudible) and grabs something he does see on the table of value. And . . . with a .25 auto resulting in bodily injury, the gunshot wound.

(Inaudible) all the evidence you'll find that the State has met the burden of proof on each and every element of the crimes charged against [Street] and return a verdict of guilty on all counts.

Tr. at 561-62. The jury found Street guilty as charged.

[11] Following a sentencing hearing, the trial court found numerous aggravating circumstances and no mitigating circumstances. The court then entered its judgment of conviction and imposed its sentence as follows:

> The Court hereby commits the Defendant to the Indiana Department of Correction[] for: Count I—40 years concurrent with 40 years on Count II. The Court merges the convictions on Counts II and III; consecutive to [sic] 8 years on Count IV; concurrent with 3 years on Count V; concurrent with 3 years on Count VI; concurrent with 8 years on Count VII; concurrent with 1 year on Count VIII; to be served CONSECUTIVE to 30 years on being a Habitual Offender for a total of 78 years. . . .

Appellant's App. at 183. This appeal ensued.

# Discussion and Decision

### Issue One:  Double Jeopardy

[12] We first consider Street's contention that several of his convictions violate Indiana's prohibitions against double jeopardy. Questions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this court *sua sponte*. *See Smith v. State*, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008). Whether convictions violate double jeopardy is a

pure question of law, which we review de novo. *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

[13] Article 1, Section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." As our supreme court has explained:

> In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)[,] this Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The actual evidence test is applied to all the elements of both offenses. "In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

> Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the

Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." *Richardson*, 717 N.E.2d at 53 n.46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id.* at 1234.

*Garrett v. State*, 992 N.E.2d 710, 719-20 (Ind. 2013) (last alteration original).[2]

[14] Of particular relevance to this appeal is our supreme court's opinion in *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). In *Pierce*, the defendant broke into the house of his victim. Inside, he raped his victim and demanded money from her. The defendant's assault resulted in bodily injury to the victim. The trial court entered judgment of conviction against the defendant for, among other things, burglary, as a Class A felony, and robbery, as a Class B felony.

[15] In reviewing those two convictions, our supreme court held:

> To convict Pierce of burglary as a Class A felony, the State must show that: (1) Pierce broke and entered (2) the victim's house (3) with the intent to commit a felony therein (4) resulting in either bodily injury or serious bodily injury. Ind. Code § 35-43-2-1 (1998). To convict Pierce for robbery as a Class B felony, the State must show that Pierce: (1) knowingly or intentionally (2)

---

[2] Street does not challenge the validity of his convictions under either the Fifth Amendment to the United States Constitution or under the statutory elements test of the Indiana Constitution.

took money (3) from the presence of the victim (4) by use of force or threat of force and (5) while armed with a deadly weapon or resulting in bodily injury to the victim. *Id.* 35-42-5-1.

Each of these crimes includes evidence or facts not essential to the other. The taking of money supports the robbery and the breaking and entering supports the burglary, but neither is an element of the other crime. Nevertheless, we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*. *See Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring); *id.* at 57 (Boehm, J., concurring). *Among these is the doctrine that where a burglary conviction is elevated to a Class A felony based on the same bodily injury that forms the basis of a Class B robbery conviction, the two cannot stand.* *Cf. Campbell v. State*, 622 N.E.2d 495, 500 (Ind. 1993) (battery and burglary); *Wolfe v. State*, 549 N.E.2d 1024, 1025 (Ind. 1990) (attempted rape and robbery); *McDonald v. State*, 542 N.E.2d 552, 555-56 (Ind. 1989) (two robberies). Accordingly, the robbery conviction is reduced to a C felony.

*Id.* (emphasis added; footnotes omitted).[3]

---

[3] In *Leggs v. State*, we stated: "A defendant is subjected to double jeopardy 'where a felony is elevated in class based on the same statutory factor and factual basis that was used to elevate another felony in class, [thus] [sic] the two cannot stand together and one must be reduced in class.'" 966 N.E.2d 204, 208-09 (Ind. Ct. App. 2012) (quoting *Pierce*, 761 N.E.2d at 830) (first alteration original to *Leggs*). The language quoted within this quote does not appear in *Pierce* but, rather, is from *Hancock v. State*, 768 N.E.2d 880, 880 (Ind. 2002). To be sure, however, the impermissible double enhancement in *Pierce* was expressly limited to "the same bodily injury" underlying the Class A felony burglary and the Class B felony robbery. 761 N.E.2d at 830. Likewise, the "same statutory factor and factual basis that was used to elevate" the two felonies in *Hancock* was the same drugging of a victim of rape and criminal deviate conduct. 768 N.E.2d at 880. Thus, the language in *Hancock* is more limited than it appears. For example, it does not prohibit multiple enhancements based on a defendant's use of the same weapon in the commission of multiple offenses, which would be contrary to our supreme court's holding in *Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2003) ("The defendant's use of the same weapon in the commission of separate and distinct offenses . . . does not present a violation of the Indiana Double Jeopardy Clause.").

[16] Likewise, in *Campbell*, our supreme court held:

> The Court of Appeals remanded this cause to the trial court with instructions to vacate the class C felony battery conviction and resentence appellant for battery as a class B misdemeanor, because the enhanced felony level of both [the Class C felony battery and Class A felony burglary] was based upon the same injurious consequences, violating state and federal double jeopardy prohibitions. We agree. Although the battery information alleged use of a deadly weapon and the burglary information alleged serious bodily injury, the basis for the elevation of both crimes was the same slashing of [the victim's] face. Appellant was improperly sentenced for battery as a class C felony.

622 N.E.2d at 500, *clarified as still good law on this issue*, *Pierce*, 761 N.E.2d at 830 n.4.

[17] Here, Street first argues that his convictions for Counts I and II—burglary, as a Class A felony, and attempted robbery, as a Class A felony, respectively— violate the rule announced in *Pierce*. The State concedes both that Street's convictions on Count I and Count II violated Street's double jeopardy rights under *Pierce* and that the proper remedy is to vacate Street's conviction for Count II, attempted robbery as a Class A felony.

[18] However, the State's concession that Count II should be vacated appears to be premised on reinstating Street's conviction for Count III, attempted robbery as a Class B felony, which the trial court had originally "merge[d]" with Count II. *See* Appellant's App. at 183. The State is partly right; Count III should be reinstated, but not as a Class B felony. At the times relevant to Street's

convictions, the base-level offense for robbery was as a Class C felony. I.C. § 35-42-5-1 (2014). That offense was enhanced to a Class B felony if the defendant committed the offense while armed with a deadly weapon or the offense resulted in bodily injury to another person. *Id.* And it was enhanced to a Class A felony if it resulted in serious bodily injury to another person. *Id.*

[19] Here, the only difference between Count II and Count III was the State's alternative assertions that the injury to Corn was either serious bodily injury—and therefore the Class A felony alleged under Count II—or bodily injury—and therefore the Class B felony alleged under Count III. That is, the State charged Count III as a lesser-included offense to Count II, and, as such, the trial court was correct to conclude that it could not punish Street under both Count II and Count III. *See, e.g.*, *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002). But Count III is still an enhancement to the base, Class C felony robbery, and the enhancement under Count III is premised on the same bodily injury that formed the enhancement under Count I and elevated the burglary offense to a Class A felony. *See* I.C. § 35-43-2-1(2). *Pierce* expressly requires that the Class B felony robbery conviction be reduced in these circumstances to a Class C felony. 761 N.E.2d at 830.

[20] We next consider Street's argument that his conviction under Count IV—battery, as a Class C felony—must be vacated in light of his conviction under Count III. As with the State above, here Street is partly right: his conviction for battery, as a Class C felony, cannot stand, but it cannot stand because the enhancement under Count IV is based on the same facts that resulted in his

enhancement under Count I, burglary as a Class A felony. As our supreme court explained in *Campbell*: "Although the battery information alleged use of a deadly weapon and the burglary information alleged serious bodily injury, the basis for the elevation of both crimes was the same" injury to the victim— namely, Corn being shot by Street's use of the deadly weapon. 622 N.E.2d at 500. Accordingly, as in *Campbell*, here the Class C felony conviction must be reduced to a Class B misdemeanor. *Id.*; *see* I.C. § 35-42-2-1(a).

[21] In sum, we reverse Street's convictions under Counts II, III, and IV. We remand with instructions that the trial court: vacate Street's conviction under Count II; reinstate Street's conviction under Count III for robbery, as a Class C felony; and reduce Street's conviction under Count IV to battery, as a Class B misdemeanor. On remand, the court shall resentence Street accordingly.

### Issue Two: Fundamental Error

[22] We next consider Street's argument that his convictions must be reversed because the trial court committed fundamental error when it permitted the jury to hear the video recordings of Fine and Armstead, who both referenced Street's prior incarceration. Because Street did not object to the admission of this evidence, "we will only reverse the trial court if the trial court committed error that was . . . a substantial, blatant violation of due process that must be so prejudicial to the rights of a defendant as to make a fair trial impossible." *Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015) (quotations omitted)..

[23] There is no question that it was error for the jury to hear of Street's irrelevant prior convictions. As the Indiana Supreme Court has stated: "evidence of a prior conviction is as prejudicial as evidence can get . . . ." *Thompson v. State*, 690 N.E.2d 224, 235 (Ind. 1997). Seizing on this, Street asserts that "we cannot say the jury's decision was *not* based on knowing Mr. Street had previously been incarcerated for committing a criminal offense." Appellant's Br. at 6 (emphasis added).

[24] But we can say exactly that. While Street did not object to the admission of the erroneous statements, he did request an admonishment that the jury disregard them, and the trial court admonished the jury accordingly. "We presume the jury followed the trial court's admonishment and that the excluded testimony played no part in the jury's deliberation." *Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001). If we must presume the jury followed an admonishment, then we cannot assume, as Street does, that the jury considered the erroneous statements covered by the admonishment.

[25] Moreover, the erroneously admitted statements were isolated, passing comments in a voluminous record. *Cf. Rosales*, 23 N.E.3d at 16 (holding that, but for the State's "repeated insistence" on an erroneous statement of the mens rea necessary to convict, "the error in this case likely would not rise to the level of fundamental"). Juxtaposed against those passing comments is the thorough and descriptive testimony of Corn, Benjamin, and numerous officers and other witnesses. Those witnesses, among other things, personally identified Street as the invader or as the possessor of the handgun or determined that the handgun

found on Street's person had been used in the home invasion. In light of that significant and incriminating testimony, we cannot say that the error here was so substantial and blatant as to have made a fair trial impossible. Therefore, no fundamental error occurred, and we affirm Street's convictions.

### Issue Three: Sufficient Evidence of Neglect of a Dependent

[26] Street also asserts that the State failed to present sufficient evidence to support his conviction for neglect of a dependent, as a Class D felony. Our standard for reviewing the sufficiency of the evidence needed to support a criminal conviction is as follows:

> First, we neither reweigh the evidence nor judge the credibility of witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Second, we only consider "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* "It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling." *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005) (citations omitted).

*Willis v. State*, ___ N.E.3d ___, slip op. at 3 (Ind. 2015).

[27] Pursuant to Indiana Code Section 35-46-1-4(a), to show that Street had committed neglect of a dependent, as a Class D felony, the State was required

to show beyond a reasonable doubt that Street, "having the care of a dependent, whether assumed voluntarily or because of a legal obligation," knowingly or intentionally placed the dependent in a situation that endangered the dependent's life or health. As alleged here, the State needed to show that Street had care of J.T. and knowingly or intentionally placed J.T. in a situation that endangered J.T. Street's only argument on appeal is that the State did not show that Street voluntarily assumed care of J.T.

[28] The State presented sufficient evidence to support Street's conviction. The State showed that Street allowed J.T. to sleep in Street's bed. And, while J.T. slept in that bed, Street had a loaded firearm inside a pillow case on the bed. A reasonable trier of fact could conclude that, during that time, Street had voluntarily assumed care of J.T. while also placing J.T. in an endangering situation. Thus, we affirm Street's conviction for neglect of a dependent, as a Class D felony.

### Issue Four: Habitual Offender Enhancement

[29] Finally, we address Street's contention that the trial court erred when it ordered Street's habitual offender enhancement to be an independent, thirty-year sentence consecutive to the sentences imposed for Street's offenses. The State concedes that the trial court erred in this respect. "A habitual offender finding does not constitute a separate crime nor does it result in a separate sentence[;] rather[,] it results in a sentence enhancement imposed upon the conviction of a subsequent felony." *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001). Thus,

we remand with instructions that the court properly impose Street's habitual offender conviction as a sentence enhancement.

## Conclusion

[30] In sum, we reverse Street's convictions under Counts II, III, and IV, and we reverse the trial court's imposition of a freestanding sentence for the habitual offender enhancement. We remand with instructions that the trial court: vacate Street's conviction under Count II; reinstate Street's conviction under Count III for robbery, as a Class C felony; reduce Street's conviction under Count IV to battery, as a Class B misdemeanor; and resentence Street, including properly applying Street's habitual offender enhancement against him. On all other issues, we affirm.

[31] Affirmed in part, reversed in part, and remanded with instructions.

Baker, J., and Friedlander, J., concur.