# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2018, 10:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Emilee L. Stotts
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon D. Mettler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 31, 2018

Court of Appeals Case No.
35A02-1711-CR-2742

Appeal from the Huntington Circuit Court

The Honorable Thomas M. Hakes, Judge

Trial Court Cause No.
35C01-1610-F1-182

**Crone, Judge.**

# Case Summary

While under the influence of illegal drugs, Brandon D. Mettler drove his vehicle left of center at a high speed and collided with two oncoming vehicles. As a result, his girlfriend's six-year-old son was killed, and his girlfriend and her two other children were injured. A jury convicted him of level 1 felony neglect of a dependent causing death, level 4 felony operating while under the influence of a controlled substance causing death, level 5 felony neglect of a dependent, and level 6 felony neglect of a dependent. He admitted to his habitual offender status, and the trial court sentenced him to an aggregate sixty-five-year term. He now appeals, challenging the sufficiency of the evidence to support his neglect convictions, the trial court's treatment of aggravating factors during sentencing, and the appropriateness of his sentence. We affirm.

# Facts and Procedural History

In January 2014, Mettler and Kaytlin Brubaker became romantically involved. Within a couple months, they moved in together and resided with Brubaker's three sons, twins Ka.B. and Ky.B., born in 2009, and Ko.B., born in 2012 (collectively "the Children"). Mettler, Brubaker, and the Children lived together as a family for the ensuing two years, with Mettler driving the Children to school, feeding them, playing with them, bathing them, and helping with discipline. Tr. Vol. 3 at 54, 79. Mettler provided financially for the Children and claimed them as dependents on his 2015 tax form. *Id*. at 55. The Children referred to Mettler as "daddy," and Mettler's biological children, who lived elsewhere, referred to the Children as their brothers. *Id*. at 54.

[3]     In 2015, Mettler became addicted to heroin and methamphetamine ("meth"). Soon thereafter, Brubaker became addicted as well. Mettler injected heroin every four to six hours and smoked meth regularly. *Id*. at 60. He sometimes would "cook" the heroin in the Children's presence. *Id*. at 84-85.

[4]     On March 26, 2016, the family planned to go to Fort Wayne, pick up Mettler's biological children, and go to a movie. Mettler injected heroin around 11:00 a.m., smoked meth at 11:30 a.m., and repeated the regimen around 2:00 and 2:30 p.m., respectively. *Id*. at 75. At 3:00 p.m., the family left North Manchester for Fort Wayne in their minivan, with Mettler driving, Brubaker in the front passenger seat, and the Children in the back seats. At one point, Brubaker expressed her concern to Mettler, who appeared to be nodding off, but Mettler said that he was fine and would not pull over. He told her to be quiet or he would "shut [her] up." *Id*. at 63-64. Shortly thereafter, Mettler drove about one foot left of the center line and collided with a piece of farm equipment being towed by an oncoming pickup truck. He then collided with a second oncoming pickup truck, also towing farm equipment. The posted speed limit on the state highway was fifty-five miles per hour. An accident reconstruction specialist determined that Mettler had his cruise control set at sixty-seven or sixty-eight miles per hour at the time of the accident. He also found no evidence of Mettler braking or swerving.

[5]     Emergency personnel arrived, and six-year-old Ka.B. died at the scene. The cause of death was blunt force trauma with a skull fracture and severe brain injury. State's Ex. 10. Three-year-old Ko.B. was hospitalized and placed in the

intensive care unit for several days with an eye socket fracture and lethargy. Brubaker and Ky.B. were treated at the hospital and released. Mettler suffered serious injuries and was taken to the hospital, where he tested positive for amphetamine, methamphetamine, codeine, and morphine (metabolite of heroin).

[6] The State charged Mettler with level 1 felony neglect of a dependent resulting in death, level 4 felony operating while under the influence ("OWI") of a controlled substance causing death, level 5 felony neglect of a dependent, level 6 felony neglect of a dependent, driving left of center (infraction), and a habitual offender count. In bifurcated proceedings, the jury convicted him of the three neglect counts and the OWI count. Mettler subsequently admitted to the habitual offender count.

[7] At sentencing, the trial court identified as aggravating circumstances Mettler's violation of his position of trust with the Children, his criminal history, the fact that he was out on bond when he committed the current offenses, and a new and unrelated criminal charge against him. The court specifically found no mitigating circumstances. The court did not enter judgment on Mettler's OWI count and instead, merged it with his level 1 felony neglect conviction and sentenced him to an aggregate sixty-five-year term. The sentence comprised thirty-nine years for level 1 felony neglect, consecutive five- and two-year terms, respectively, for the level 5 and 6 felony neglect convictions, and a nineteen-year fixed additional term for the habitual offender adjudication. Mettler now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Sufficient evidence supports Mettler's convictions for neglect of a dependent.

[8] Mettler contends that the evidence is insufficient to support his convictions for neglect of a dependent. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*. The evidence need not "overcome every reasonable hypothesis of innocence." *Dalton v. State*, 56 N.E.3d 644, 647 (Ind. Ct. App. 2016) (quoting *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)), *trans. denied*.

[9] Mettler was convicted of one count each of neglect of a dependent as a level 1 felony, a level 5 felony, and a level 6 felony. Indiana Code Section 35-46-1-4(a)(1) reads, "A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally … places the dependent in a situation that endangers the dependent's life or health … commits neglect of a dependent, a Level 6 felony." The offense is elevated to a level 5 felony when it results in bodily injury to the dependent and to a level 1 felony where it is committed by a person at least age eighteen and results

in the death of a dependent who is under age fourteen. Ind. Code § 35-46-1-4(b)(1), -(b)(3). Indiana Code Section 35-46-1-1 defines "Dependent" as "(1) an unemancipated person who is under eighteen (18) years of age; or (2) a person of any age who has a mental or physical disability."

[10] Mettler challenges the sufficiency of the evidence only with respect to the element of whether the Children were *his* dependents by voluntary assumption of care. In making this argument, he emphasizes that he was under no legal obligation to care for the Children, as they were Brubaker's biological children with other men and he had not sought to adopt or otherwise formally obligate himself to them. In this vein, we note that the statute was specifically drafted to include circumstances where the facts and circumstances support a reasonable inference that the adult has voluntarily assumed the care of the dependent.

[11] In *McGowan v. State*, 89 N.E.3d 424, 429 (Ind. Ct. App. 2017), another panel of this Court found sufficient evidence to support the jury's factual determination that the defendant had voluntarily assumed the care of her cohabiting boyfriend's children for purposes of the neglect statute and had knowingly placed them in danger by essentially running a drug house. McGowan and her boyfriend operated as a family with the boyfriend's children and had two additional children together. The Court found sufficient evidence that McGowan voluntarily assumed the care of her boyfriend's children by cooking for them, enrolling them in school, transporting them to school, and assuming a "parent-like role." *Id*. at 425.

[12]    Similarly, in *Street v. State*, 30 N.E.3d 41, 50 (Ind. Ct. App. 2015), *trans. denied*, another panel of this Court found the evidence sufficient to support a finding of voluntary assumption of care to support Street's neglect conviction where he lived with his girlfriend and her daughter and grandchild, and the daughter viewed him as a father figure. Street, his girlfriend, and his girlfriend's grandchild all slept together in a bed in which Street kept a loaded firearm inside a pillowcase. *Id*. at 44.

[13]    Here, Mettler had cohabited with Brubaker and the Children for two years. He admitted that he was "there as a father figure" for the Children. Tr. Vol. 3 at 100. Although he attempted to downplay his role as secondary to Brubaker's, especially on matters of discipline and punishment, he was "daddy" to the Children and referred to them as his "sons." *Id*. at 54, 79, 95-96. He drove the Children to school, fed them, played with them, and bathed them. *Id*. at 54. He provided for the Children financially and claimed them as dependents on his 2015 tax form. *Id*. at 55. His own biological children, with whom he had regular visitation, referred to the Children as their brothers. *Id*. at 54. He admitted that driving the Children in his vehicle at the time of the crash amounted to voluntarily assuming their care. *See Id*. at 108 (Mettler's response to the State's question, "When you're the driver, who has the care of the occupants of that car?" … "I do.").

[14]    Simply put, Mettler, Brubaker, and the Children operated as a family, and Mettler functioned as the Children's father. Thus, the evidence supports the jury's determination that Mettler voluntarily assumed their care. His arguments

amount to invitations to reweigh evidence and reassess witness credibility, which we cannot and will not do. *See Moore*, 27 N.E.3d at 754. The evidence is sufficient to support Mettler's convictions for neglect of a dependent.

## Section 2 – The trial court acted within its discretion in its treatment of aggravating factors during sentencing.

Mettler also challenges the trial court's treatment of aggravating factors during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and so long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). One of the ways in which a trial court may abuse its discretion is if the sentencing statement identifies aggravating factors that "are improper as a matter of law." *Anglemyer*, 868 N.E.2d at 491.

Mettler claims that the trial court improperly designated as an aggravator a material element of his neglect offenses. A trial court may not use a material element of the offense as an aggravating factor, but it may find the nature and particularized circumstances surrounding the offense to be an aggravating factor. *Caraway v. State*, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011), *trans. denied* (2012). In other words, "[w]here a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense,

absent something unique about the circumstances that would justify deviating from the advisory sentence, that reason is 'improper as a matter of law.'" *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014) (quoting *Anglemyer*, 868 N.E.2d at 491). "Even if the trial court relied on an improper factor under this aggravating circumstance, the sentence may be upheld so long as [t]he remaining components of that aggravator were proper." *Id.* at 853 (quoting *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001)).

[17] Particularly, Mettler contends that the trial court improperly designated as an aggravator his violation of a position of trust. He asserts that this factor essentially is equivalent to the voluntary assumption of care element of the neglect offenses. *See* Ind. Code § 35-46-1-4 (defining neglect of a dependent). "A position of trust exists where a defendant has 'more than a casual relationship with the victim and has abused the trust resulting from that relationship.'" *Amalfitano v. State*, 956 N.E.2d 208, 211 (Ind. Ct. App. 2011) (quoting *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007), *trans. denied* (2012). "Generally, cohabitation arrangements of nearly any character between adults do in fact, and should, establish a position of trust between the adults and minors living or staying together." *Id*.

[18] At sentencing, the trial court addressed the aggravating circumstances as follows:

> I don't understand taking drugs. I do, however, understand drinking. So I can equate the two. Not quite, but I can equate them a bit. I drink alcohol. I raised three children. I never, ever

once got into a car and drove those children anywhere. Not down the street, not out of the block, if I had alcohol in my system. Just didn't do it. That has nothing to do with the fact that I would drink alcohol. It has to do with the fact that I wouldn't do it. I think that comes under position of trust relating to children. They don't have a choice. Get in the car, kids, we're going down to the liquor store. Get in the car, kids, we're going to go watch a movie. And one of them doesn't make it there and two of them are harmed. And you're lucky to be alive. Position of trust relating to children is one of the most powerful aggravators that exists. They don't have a choice. What are they going to do? Go, "No, we'll skip this time, thanks. We'll stay here and watch tv in the motel room. No, you've been doing drugs today, we're going to skip today, thanks anyway." Sure they could have done that. And the sun comes up in the west. They didn't have a chance. That's the problem. You were out on bond, you had an interim charge in Grant County and your criminal history which is rife with drugs is extensive.

Tr. Vol. 3 at 160.

[19] We agree with Mettler's observation that the voluntary assumption of care is similar to a position of trust, in that both involve an examination of the nature of the relationship between the adult and the minor children. That said, we believe the trial court's remarks reflect a narrower focus with respect to the latter. The court focused very particularly on Mettler's decision to drive the Children while under the influence of heroin and meth, not merely on his broader assumption of their care by providing financially and acting as a father figure, albeit one addicted to drugs. As such, we do not believe that the trial court was merely parroting an element of the offense. Even if that had been the case, we note that the court also identified as aggravators Mettler's extensive

criminal record and drug addiction, which we address in more depth below. The trial court acted within its discretion in its treatment of aggravating factors.

## Section 3 – Mettler has failed to meet his burden of establishing that his sentence is inappropriate.

[20] Finally, Mettler asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490.

[21] In considering the nature of Mettler's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Id.* at

494. When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[22] The sentencing range for a level 1 felony is twenty to forty years, with an advisory term of thirty years. Ind. Code § 35-50-2-4(b). A level 5 felony carries a sentencing range of one to six years, with a three-year advisory term, and a level 6 felony carries a range of six months to two and one-half years, with a one-year advisory term. Ind. Code §§ 35-50-2-6(b), -7(b). A habitual offender finding for a person convicted of a level 1 felony carries an additional fixed nonsuspendible term of six to twenty years. Ind. Code § 35-50-2-8(i)(1). Mettler's sixty-five-year aggregate sentence was not the maximum but was above the advisory term. To the extent that he complains about the trial court executing his entire term, we remind him that nineteen of his sixty-five years are nonsuspendible pursuant to his habitual offender adjudication.

[23] The nature and consequences of Mettler's offenses are devastating. He injected heroin and smoked meth twice on the day of the crash, with his second administration of the drugs coming within an hour of his driving the family on a highway to another city. He was nodding off while driving, yet he drove more than ten miles per hour above the posted speed limit. He disregarded Brubaker's admonitions to pay attention or pull over and drove one foot left of center. As he plunged into the oncoming farm equipment vehicles, he left no

trace of having braked, skidded, or swerved. Minutes later, six-year-old Ka.B. was dead, three-year-old Ko.B. was hospitalized in intensive care, and Brubaker and six-year-old Ky.B. required treatment at the emergency room. Mettler's neglect was more than just a failure to supervise dependents who were exposed to danger; Mettler was the instrumentality of that danger. The nature of Mettler's offenses does not militate toward a reduced sentence.

[24] Nor does Mettler's character merit a shorter sentence. We conduct our review of a defendant's character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Based on our review of the record, we find Mettler to be a serial drug user whose normal routine includes taking meth and heroin several times a day and who admits to cooking heroin in front of the Children. As a teenager, he used marijuana, alcohol, and "pills," and did not finish high school because of "drugs/missed too much." Tr. Vol. 3 at 147; Appellant's App. Vol. 3 at 27. His drug use, now escalated, has continued to carry negative consequences such as his loss of employment due to excessive absenteeism. He admitted that when he is under the influence of drugs, he has "confusion as far as [his] thoughts," yet he testified that he drove the twins to school numerous times and that he had driven the Children in the past while under the influence. Tr. Vol. 3 at 97, 102, 109. Even after he caused the fatal crash, his attitude reflected callous indifference rather than remorse over the devastation and loss. *See, e.g., id.* at 86 (Brubaker's testimony that Mettler told her "to get over it. Sh*t happens."). He attended a therapeutic communities program while

incarcerated for prior offenses yet resumed his drug use after his release and pled guilty to possession of chemical reagents with intent to manufacture. In short, Mettler does not appear to have made any serious effort to make the changes necessary to conquer his addiction.

[25] Also significant is Mettler's criminal record, which spans four counties and two decades. His first entanglement with the criminal justice system came at age ten, when he was placed on probation and in community service for offenses that would have been class C felony burglary, class C felony criminal mischief, and class D felony theft if committed by an adult. As a teenager, he was in and out of community service and served probation for conduct amounting to criminal trespass and underage possession of alcoholic beverages. His adult record includes convictions for class B felony dealing in narcotics, class C felony sexual misconduct with a minor, two level 6 felony drug-related offenses, and class A misdemeanor residential entry. He was out on bond when he committed the current offenses and was the subject of an unrelated charge filed in another county shortly thereafter.

[26] Based on the foregoing, we conclude that Mettler has failed to demonstrate that his sentence is inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm his sentence.

[27] Affirmed.

Bailey, J., and Brown, J., concur.